**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **ANTHONY D. CANCILLIERE**,<br>2239 Green Acres Drive<br>Parma, OH 44134<br><br>and<br><br>**MELISSA M. CANCILLIERE**,<br>2239 Green Acres Drive<br>Parma, OH 44134<br><br>       Plaintiffs,<br><br>   v.<br><br>**NEWREZ, LLC d/b/a**<br>**SHELLPOINT MORTGAGE SERVICING**,<br>℅ Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>      Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiffs Anthony and Melissa Cancilliere, through counsel, for their Complaint for Damages against Defendant Shellpoint Mortgage Servicing, state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiffs Anthony and Melissa Cancilliere (collectively, "Plaintiffs") are the owners of residential real property, located at and commonly known as 2239 Green Acres Drive, Parma, OH 44134 (the "Home").

2.     Plaintiffs currently maintain the Home as their primary, principal residence, and have so maintained the Home for all times relevant to the allegations of the Complaint.

3.     Defendant Shellpoint Mortgage Servicing ("Defendant" or "Shellpoint") is a mortgage servicer with its main offices located in Greenville, South Carolina.

4.      Shellpoint is the servicer of a note executed by Plaintiffs (the "Note") and of a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan"). A copy of the Mortgage is attached as **Exhibit 1**.

5.      Non-party VRMTG Asset Trust is the current owner of the Note.

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA).

7.      This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

8.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

9.      This action is filed to enforce statutory provisions of RESPA as well as regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, *et seq.* ("Regulation X").

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

12.     Plaintiffs assert claims for relief against Shellpoint for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

13.     Shellpoint is a mortgage servicer as defined by RESPA and Regulation X. 12 U.S.C. § 2605(i)(2); 12 C.F.R. § 1024.2(b).

14.     The Loan is a "federally related mortgage loan" as defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

15.     The Loan is not a "reverse mortgage transaction" as defined by RESPA and Regulation X. 12 C.F.R. § 1024.31; *see* 12 C.F.R. § 1026.33(a) (Regulation Z).

16.     The Loan is secured by the Home which is Plaintiffs' principal residence. 12 C.F.R. § 1024.30(c)(2).

17.     Shellpoint is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.7000.

18.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

19.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

20.     Plaintiffs have a private right action under RESPA and Regulation X pursuant to 12 U.S.C. § 2605(f) for the claimed violations and such action provides for remedies including actual damages, statutory damages, and attorneys' fees and costs.

21.     Plaintiffs also assert statutory claims for violations of the Residential Mortgage Lending Act, R.C. 1322.01, *et seq.* (RMLA).

## FACTUAL BACKGROUND

22.     On February 25, 2002, Plaintiffs obtained the Loan from non-party ABN AMRO Mortgage Group, Inc.

23.     Pursuant the notice provision in the Mortgage, there can only be one designated notice address at one time:

> **15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

*See* Exhibit 1; *see also Lewis v. PNC Bank, N.A.*, No. 3:17-cv-220, 2018 U.S. Dist. LEXIS 201997, at *14-17 (S.D. Ohio Nov. 29, 2018) ("Use of legally designated addresses is essential to fulfilling RESPA duties.").

24.     Also on April 22, 2022, Plaintiffs, through counsel, submitted a loss mitigation application to Shellpoint via facsimile (the "Application"). A copy of the Application's cover letter, Borrower Authorization of Third Party, and facsimile transmission receipt is attached as **Exhibit 2**.

25.     The Application's cover letter notified Shellpoint that Plaintiffs were represented by Dann Law and established a new designated notice address that Shellpoint was required to use when sending correspondence relating to the Loan. The cover letter instructed Shellpoint to contact Dann Law in writing if anything further was required regarding the Application. *See* Exhibit 2.

26.     The Application also contains a CFPB Borrower Authorization of Third Party that notified Shellpoint that Plaintiffs were represented by Dann Law. *See* Exhibit 2.

27.     On or about April 28, 2022, Shellpoint sent Plaintiffs correspondence requesting missing, supplemental, or corrective information and/or documents by May 28, 2022 ("Incomplete Notice #1"). A copy of Incomplete Notice #1 is attached as **Exhibit 3**.

28.     Incomplete Notice #1 was sent to the Home, instead of Plaintiffs' designated notice

address, causing unnecessary delay to the loss mitigation process. *See* Exhibit 3.

29.     On May 10, 2022, Plaintiffs, through counsel, submitted all of the information and documents requested by Incomplete Notice #1 to Shellpoint via facsimile ("Supplemental Submission #1"). A copy of the cover letter and facsimile transmission receipt for Supplemental Submission #1 is attached as **Exhibit 4**.

30.     Despite receipt of Supplemental Submission #1, Shellpoint failed to send Plaintiffs any written notice in response or otherwise requesting Plaintiffs supply any missing, supplemental, or corrective information and/or documents.

31.     On or about June 20, 2022, Plaintiffs, through counsel, sent a notice of error ("NOE #1") to Shellpoint at the Designated Address. A copy of NOE #1, without supporting enclosures, and tracking information evidencing delivery of NOE #1 is attached as **Exhibit 5**.

32.     Through NOE #1, Plaintiffs asserted that, since Plaintiffs sent Shellpoint Supplemental Submission #1, Shellpoint failed to provide Plaintiffs with a written notice stating whether the Application was complete or incomplete, and, if incomplete, stating what was required to complete the Application. *See* Exhibit 5.

33.     Shellpoint received NOE #1 at the Designated Address on June 29, 2022. *See* Exhibit 5.

34.     Shellpoint sent correspondence dated June 15, 2022 stating that it was unable to complete the evaluation of the Application because it did not receive the required documents (the "Review Letter #1"). A copy of Review Letter #1 is attached as **Exhibit 6**.

35.     Review Letter #1 was also sent to the Home, instead of Plaintiffs' designated notice address. *See* Exhibit 6.

36.     Dann Law received Review Letter #1 on or about June 27, 2022.

37.     On or about June 27, 2022, Plaintiffs, through counsel, sent a notice of error ("NOE

#2") to Shellpoint at the Designated Address. A copy of NOE #2, without supporting enclosures, and tracking information evidencing delivery of NOE #2 is attached as **Exhibit 7**.

38.    Through NOE #2, Plaintiffs asserted that Shellpoint failed to exercise due diligence in obtaining information and/or documents needed to complete the Application, as shown by Review Letter #1, and that Plaintiffs had complied with all requirements needed to complete the Application. *See* Exhibit 7.

39.    Shellpoint received NOE #2 at the Designated Address on July 5, 2022. *See* Exhibit 7.

40.    On or about July 11, 2022, Plaintiffs received further correspondence from Shellpoint requesting missing, supplemental, or corrective information and/or documents by August 10, 2022 ("Incomplete Notice #2"). A copy of Incomplete Notice #2 is attached as **Exhibit 8**.

41.    Incomplete Notice #2 was also sent to the Home, instead of Plaintiffs' designated notice address. *See* Exhibit 8.

42.    On or about July 26, 2022, Plaintiffs, through counsel, sent a notice of error ("NOE #3") to Shellpoint at the Designated Address. A copy of NOE #3, without supporting enclosures, and tracking information evidencing delivery of NOE #3 is attached as **Exhibit 9**.

43.    Through NOE #3, Plaintiffs asserted that Shellpoint failed to exercise due diligence in obtaining information and/or documents needed to complete the Application, as shown by Incomplete Notice #2, even though Plaintiffs had fully complied with Shellpoint's requests through their previous loss mitigation submissions. Shellpoint had previously not responded to Plaintiffs within thirty days, therefore triggering missing document requests. *See* Exhibit 9.

44.    Shellpoint received NOE #3 at the Designated Address on August 2, 2022. *See* Exhibit 9.

45.     On or about August 5, 2022, Shellpoint sent a response to NOE #1 and NOE #2 to Plaintiffs (the "NOE Response"). A copy of the NOE Response is attached as **Exhibit 10**.

46.     In the NOE Response, Shellpoint stated that it required additional information and documents to complete the Application as of May 10, 2022 and wrongfully concluded that it was not required to provide written notice to Plaintiffs because "Shellpoint had already sent an incomplete notice for the application on April 28, 2022". *See* Exhibit 10.

47.     In the NOE Response, Shellpoint admits that it did not exercise reasonable diligence or comply with the notice requirement of 12 C.F.R. § 1024.41(b)(2)(i)(B). Instead of sending written notices to Plaintiffs' designated notice address, Shellpoint only attempted to contact Plaintiffs by telephone on four separate occasions "to go over what remaining documents were needed". *See* Exhibit 10.

48.     On August 9, 2022, Plaintiffs, through counsel, submitted the information and documents requested by Incomplete Notice #2 to Shellpoint via facsimile ("Supplemental Submission #2"). A copy of the cover letter and facsimile transmission receipt for Supplemental Submission #2 is attached as **Exhibit 11**.

49.     On or about August 11, 2022, Shellpoint sent correspondence to Plaintiffs stating it was unable to complete the loss mitigation evaluation because it did not receive all of the documents requested ("Review Letter #2"). A copy of Review Letter #2 is attached as **Exhibit 12**.

50.     However, as discussed, *supra*, Shellpoint received all the information and documents requested through Incomplete Notice #2 on August 9, 2022. *See* Exhibit 11.

51.     On or about August 15, 2022, Shellpoint sent correspondence to Plaintiffs stating "[w]e have a right to invoke foreclosure based on the terms of your mortgage contract." A copy of the notice is attached as **Exhibit 13**.

52.     On August 26, 2022, Plaintiffs, through counsel, sent a request for information to

Shellpoint at the Designated Address seeking confirmation that Shellpoint received all of the requested loss mitigation information and documents by August 9, 2022 (the "RFI"). A copy of the RFI, without supporting enclosures, and tracking information evidencing delivery of the RFI is attached as **Exhibit 14**.

53.     Shellpoint received the RFI at the Designated Address on August 31, 2022. *See* Exhibit 14**.**

54.     Shellpoint sent correspondence to Dann Law on September 27, 2022 stating that it needed more time due to the complex nature of the request.

55.     On or around September 27, 2022, Shellpoint sent correspondence to Dann Law stating that, as of August 11, 2022, missing, supplemental, or corrective information and/or documents were required to complete the Application ("Incomplete Notice #3"). A copy of Incomplete Notice #3 is attached as **Exhibit 15**.

56.     Incomplete Notice #3 also states the Loan was referred to an attorney to begin foreclosure proceedings on or around April 28, 2022. *See* Exhibit 15.

57.     On October 3, 2022, Shellpoint filed a foreclosure complaint in the Court of Common Pleas, Cuyahoga County, Ohio, Case No CV-22-969552 (the "Foreclosure Action").

58.     On October 12, 2022, Plaintiffs, through counsel, submitted a supplemental loss mitigation application to Shellpoint via facsimile that provided all of the information and documents requested by Shellpoint through Incomplete Notice #3 ("Supplemental Submission #3"). A copy of Supplemental Submission #3's cover letter, Borrower Authorization of Third Party, and facsimile transmission receipt is attached as **Exhibit 16**.

59.     On October 14, 2022, Shellpoint  sent correspondence to Plaintiffs stating it was unable to complete the loss mitigation evaluation because it did not receive all of the documents requested ("Incomplete Notice  #4"). A copy of Incomplete Notice  #4 is attached as **Exhibit 17**.

60.     On October 26, 2022 , Plaintiffs, through counsel, submitted the information and documents requested by Incomplete Notice #4 to Shellpoint via facsimile ("Supplemental Submission #4"). A copy of the cover letter and facsimile transmission receipt for Supplemental Submission #4 is attached as **Exhibit 18**.

## IMPACT AND DAMAGES

61.     Shellpoint failed to exercise reasonable diligence to complete the Application. Shellpoint routinely failed to communicate with Plaintiffs in writing and through their sole designated notice address. Shellpoint continued to ask for information and documents that were already in its possession.

62.     Shellpoint's mishandling of the Application and Supplemental Submissions has caused Plaintiffs to incur attorneys' fees and costs related to subsequent loss mitigation submissions and in attempts to correct Shellpoint's errors and obtain information related to the Loan and will cause Plaintiffs to incur further attorneys' fees and costs in defense of the Foreclosure Action.

63.     Shellpoints's improper actions caused Plaintiffs to suffer from actual and proximate damages including, but not limited to:

      a.    Improper fees and charges imposed on the Loan, the collection of such fees, including any late fees and other default servicing related fees for which Plaintiffs are personally obligated or which otherwise negatively impacts any equity in the Home to which they are entitled, and refusal to refund the full amount of the improperly collected fees and charges;

      b.    Legal fees, costs, and expenses to submit the Supplemental Submissions, the RFI, and NOE #1, NOE #2, and NOE #3 (the "NOEs") to Shellpoint in a good faith attempt to comply with the Incomplete Notices, obtain information to

ascertain the nature of the problems at hand, and to otherwise amicably resolve this matter, or to have Shellpoint mitigate the harm caused to Plaintiffs to which Plaintiffs did not receive a proper or adequate responses; and,

c. Severe emotional distress driven by Shellpoint's failure to properly handle the Application and filing of the Foreclosure Action, and by justified fear that such blatant indifference would result in sale of their Home, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which, in part required an increase in the dosage of Mr. Cancilliere's prescribed medication for an existing condition.

## PATTERN AND PRACTICE OF SHELLPOINT'S VIOLATIONS OF RESPA AND REGULATION X

64. Shellpoint's actions are part of a pattern and practice of behavior in violation of Plaintiffs' rights and in abdication and contravention of Shellpoint's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

65. Shellpoint has numerous consumer complaints lodged against it nationally on the CFPB's consumer complaint database. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be accessed at the following link: http://www.consumerfinance.gov/data-research/consumer-complaints.

66. Plaintiffs have reviewed the CFPB's consumer complaint database and have identified narratives asserting that Shellpoint engaged in similar conduct against other borrowers. In particular, Plaintiffs have reviewed the seventeen (17) consumer complaints attached hereto and identified as **Group Exhibit 19**. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints show conduct which demonstrates that Shellpoint has engaged in a pattern or practice of violating RESPA with respect to other borrowers.

<u>**COUNT ONE**</u>
**VIOLATIONS OF RESPA, 12 C.F.R. § 1024.41(b) AND 12 U.S.C. § 2605**

67.     Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

68.     12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

69.     12 C.F.R. § 1024.41(b)(2), in relevant part, provides:

> (i)     If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
> (B)    Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

70.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(2)(i)(B) provides that "[e]ven if a servicer has informed a borrower that an application is complete (or notified the borrower of specific information necessary to complete an incomplete application), if the servicer determines, in the course of evaluating the loss mitigation application submitted by the borrower, that additional information or a corrected version of a previously submitted document is required, the servicer must promptly request the additional information or corrected document from the borrower pursuant to the reasonable diligence obligation in § 1024.41(b)(1)."

71.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

72.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

73.     The Foreclosure Action was filed on October 3, 2022 in the Court of Common Pleas, Cuyahoga County, Ohio.

74.     Shellpoint received the Application on April 22, 2022, Supplemental Submission #1 on May 10, 2022, and Supplemental Submission #2 on August 9, 2022.

75.     Therefore, at the times Shellpoint received the Application, Supplemental Submission #1, and Supplemental Submission #2, no foreclosure sale of the Home was scheduled.

76.     Within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of receiving Supplemental Submission #1 or Supplemental Submission #2, Shellpoint was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to Plaintiffs.

77.     Shellpoint was required to send a written notice in response to Supplemental Submission #1 by May 17, 2022.

78.     Shellpoint failed to respond to Supplemental Submission #1 until mailing Review Letter #1 dated June 15, 2022.

79.     Shellpoint was required to send a written notice in response to Supplemental Submission #2 by August 16, 2022.

80.     Shellpoint failed to respond to Supplemental Submission #2 until mailing Incomplete Notice #3 dated September 27, 2022.

81.     Shellpoint's failures to provide timely written notices in response to the Supplemental Submission #1 and Supplemental Submission #2 constitute violations of 12 C.F.R. § 1024.41(b)(2)(i)(B) and 12 U.S.C. § 2605(k)(1)(E).

82.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable

diligence in obtaining documents and information to complete a loss mitigation application."

83.     Shellpoint routinely requested information and documents that were already in its possession or not required to complete the Application.

84.     As discussed, *supra*, Shellpoint failed to timely respond to Supplemental Submission #1 and Supplemental Submission #2 in writing.

85.     Further, if Shellpoint had carefully reviewed the Application, Supplemental Submission #1, and Supplemental Submission #2, it would have discovered that any response should have been in writing and mailed to Plaintiffs' designated notice address as instructed.

86.     Shellpoint's failures resulted in Shellpoint wrongfully closing out review of the Application on two occasions and the filing of the Foreclosure Action.

87.     Shellpoint's actions in addressing the Incomplete Notices and Review Letters to Plaintiffs instead of Plaintiffs' designated notice address are further examples of Shellpoint's failure to exercise reasonable diligence in obtaining missing, supplemental, or corrective information and/or documents were required to complete the Application in violation of 12 C.F.R. § 1024.41(b)(1) and 12 U.S.C. § 2605(k)(1)(E).

88.     Shellpoint's actions caused Plaintiffs to suffer actual damages, including, but not limited to, the attorneys' fees incurred for the time in preparing all of the Supplemental Submissions, the NOEs, and the RFI, the postage costs for mailing the Supplemental Submissions, the NOEs, and the RFI, the attorneys' fees incurred in defending the Foreclosure Action, severe emotional distress, and credit damages. *See* ¶ 63.

89.     Further, Shellpoint's failure to comply with 12 C.F.R. § 1024.41(b) caused Plaintiffs' attorneys' fees and costs associated with the preparation of the Application, Supplemental Submission #1, and Supplemental Submission #2 to metamorphose into damages. *Marais v. Chase Home Fin., LLC* (Marais II), 24 F. Supp. 3d 712, 726-728 (S.D. Ohio 2014); *see*

*Marais v. Chase Home Fin. LLC* (Marais I), 736 F.3d 711, 721 (6th Cir. 2013); *Pope v. Carrington Mortg. Servs., LLC*, No. 1:18-CV-240, 2018 U.S. Dist. LEXIS 98413, at *11 (N.D. Ohio June 12, 2018) ("But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender 'ignored its statutory duties to adequately respond.'").

90. Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

91. As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

92. Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO
## VIOLATIONS OF RESPA, 12 C.F.R. § 1024.41(f) AND 12 U.S.C. § 2605

93. Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

94. 12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

95. 12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete."

96. Comment 1 of the Official CFPB Interpretations to 12 C.F.R. § 1024.41(c)(2)(iv) provides that 12 C.F.R. § 1024.41(c)(2)(iv) "requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been

given a reasonable opportunity to complete the application."

97.     12 C.F.R. § 1024.41(f)(2) provides:

> If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

> (i)     The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

> (ii)    The borrower rejects all loss mitigation options offered by the servicer; or

> (iii)   The borrower fails to perform under an agreement on a loss mitigation option.

98.     A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

99.     Shellpoint received the Application on April 22, 2022.

100.    Shellpoint requested missing, supplemental, or corrective information and/or documents to complete the Application and Plaintiffs fully complied with the requests.

101.    Despite receiving Supplemental Submission #2, which provided all of the documents requested by Incomplete Notice #2, rendering the Application "facially complete" at a minimum and therefore complete for the purposes of 12 C.F.R. §§ 1024.41(f)-(g), Shellpoint filed the Foreclosure Action on October 3, 2022.

102.    Shellpoint failed to respond to Supplemental Submission #2 in writing, and instead only requested further documents or information after its receipt of the RFI.

103.    On or about September 27, 2022, through Incomplete Notice #3, Shellpoint again requested missing, supplemental, or corrective information and/or documents to complete the Application.

104.    Instead of giving Plaintiffs a reasonable opportunity to respond to Incomplete Notice #3, Shellpoint filed the Foreclosure Action on October 3, 2022.

105.    Because Shellpoint did not give Plaintiffs a reasonable time to complete the Application before the Foreclosure Action was filed, Shellpoint was required to deem the Application a complete loss mitigation application for the purposes of 12 C.F.R. § 1024.41(f).

106.    None of the exceptions listed above apply: (1) Shellpoint failed to send any notice stating that Plaintiffs were not eligible for any loss mitigation option; (2) Plaintiffs did not reject any loss mitigation option offered by Shellpoint; and, (3) Plaintiffs did not fail to perform under any agreement on a loss mitigation option.

107.    Shellpoint's actions, in causing, the owner of the Loan, U.S. Bank, to submit documentation necessary to file the Foreclosure Action against Plaintiffs after Plaintiffs submitted a facially complete loss mitigation application, constitute clear, separate, and distinct violations of 12 CFR § 1024.41(f).

108.    Shellpoint's actions caused Plaintiffs actual damages, including the attorneys' fees incurred in defending the Foreclosure Action.

109.    Shellpoint's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights.

110.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

111.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE
## VIOLATIONS OF RESPA, 12 C.F.R. § 1024.35 AND 12 U.S.C. § 2605(k)

112.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

113.    "A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a).

114.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower." Supplement I to Part 1024.

115.    A servicer must respond to a notice of error by either:

(A)    Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B)    Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

116.    A servicer must respond to a notice of error in compliance with 12 C.F.R. §

1024.35(e)(1):

    (A)  Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

    (B)  Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

    (C)  For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

12 C.F.R. § 1024.35(e)(3)(i).

117. "A servicer of a federally related mortgage shall not...fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

118. A servicer of a federally related mortgage shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

119. The NOEs each constitute a notice of error as defined by 12 C.F.R. § 1024.35(a) as each is a written notice from Plaintiffs that includes their names, mortgage loan account number, and property address and asserts an error that they believed to have occurred. *See* Exhibit 5, Exhibit 7, and Exhibit 9.

120. On or about June 20, 2022, Plaintiffs, through counsel, submitted NOE #1 to Shellpoint at the Designated Address. *See* Exhibit 5.

121. Through NOE #1, Plaintiffs asserted that, since Plaintiffs sent Shellpoint

Supplemental Submission #1, Shellpoint failed to provide Plaintiffs with a written notice stating whether the Application was complete or incomplete, and, if incomplete, stating what was required to complete the Application. *See* Exhibit 5.

122.    Shellpoint received NOE #1 at the Designated Address on June 29, 2022. *See* Exhibit 5.

123.    On or about June 27, 2022, Plaintiffs, through counsel, submitted NOE #2 to Shellpoint at the Designated Address. *See* Exhibit 7.

124.    Through NOE #2, Plaintiffs asserted that Shellpoint failed to exercise due diligence in obtaining information and/or documents needed to complete the Application, as shown by Review Letter #1, and that Plaintiffs had complied with all requirements needed to complete the Application. *See* Exhibit 7.

125.    Shellpoint received NOE #2 at the Designated Address on July 5, 2022. *See* Exhibit 7.

126.    On or about August 5, 2022, Shellpoint sent the NOE Response to Plaintiffs in response to NOE #1 and NOE #2. *See* Exhibit 10.

127.    In the NOE Response, Shellpoint stated that it required additional information and documents to complete the Application as of May 10, 2022 and wrongfully concluded that it was not required to provide written notice to Plaintiffs, because "Shellpoint had already sent an incomplete notice for the application on April 28, 2022". *See* Exhibit 10.

128.    In the NOE Response, Shellpoint admits that it did not exercise reasonable diligence or comply with the notice requirement of 12 C.F.R. § 1024.41(b)(2)(i)(B). Instead of sending written notices to Plaintiffs' designated notice address, Shellpoint attempted to contact Plaintiffs by telephone on four separate occasions "to go over what remaining documents were needed". *See* Exhibit 10.

129.    Shellpoint did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Shellpoint did not perform a reasonable investigation into the errors alleged through NOE #1 or NOE #2 because Shellpoint would have realized that Regulation X requires written notices and Plaintiffs directed Shellpoint to contact their counsel at the established designated notice address pursuant to the terms of the Mortgage.

130.    On or about July 26, 2022, Plaintiffs, through counsel, submitted NOE #3 to Shellpoint at the Designated Address. *See* <u>Exhibit 9</u>.

131.    Through NOE #3, Plaintiffs asserted that Shellpoint failed to exercise due diligence in obtaining information and/or documents needed to complete the Application, as shown by Incomplete Notice #2, even though Plaintiffs had fully complied with Shellpoint's requests through their previous loss mitigation submissions. Shellpoint had previously not responded to Plaintiffs within thirty days, therefore triggering missing document requests. *See* <u>Exhibit 9</u>.

132.    Shellpoint received NOE #3 at the Designated Address on August 2, 2022. *See* <u>Exhibit 9</u>.

133.    Shellpoint failed to send any substantive response to NOE #3.

134.    Shellpoint did not fulfill its obligations as to 12 C.F.R. § 1024.35(e)(1)(i)(B), as it is clear that Shellpoint did not perform a reasonable investigation into the errors alleged through NOE #3 because: (1) Shellpoint failed to send a timely, written response to NOE #3; (2) Shellpoint failed to correct its errors.

135.    Shellpoint's failure to timely and properly respond to the NOEs by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through the NOEs constitutes violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) and caused Plaintiffs to suffer actual damages, as discussed, *supra*, at ¶ 63. *See Renfroe v. Nationstar Mortg.*, LLC, 822 F.3d 1241, 1246 (11th Cir. 2016) ("This statutory

mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary.").

136.    Shellpoint's conduct also caused Plaintiffs to suffer severe emotional distress driven by fear and uncertainty in their financial well-being and their obligations under the Loan which has resulted in loss of sleep, anxiety, depression, and other significant harm.

137.    Further, Shellpoint's failure to comply with 12 C.F.R. § 1024.35(e) and 12 U.S.C. § 2605(k) caused Plaintiffs' attorneys' fees and costs associated with the preparation of the NOEs to metamorphose into damages. *See Marais I* and *Marais II*.

138.    Shellpoint's actions are part of a pattern and practice of behavior in conscious disregard for Plaintiffs' rights and in abdication of Shellpoint's obligations under RESPA and Regulation X.

139.    As a result of Shellpoint's actions, Shellpoint is liable to Plaintiffs for actual damages and statutory damages, as further described, *supra*. 12 U.S.C. § 2605(f)(1).

140.    Additionally, Plaintiffs request reasonable attorneys' fees and costs incurred in filing and maintaining this action. 12 U.S.C. § 2605(f)(3).

## COUNT FOUR
### VIOLATIONS OF THE RMLA, R.C. 1322.01, *et seq.*

141.    Plaintiffs restate and incorporate all of the allegations contained in paragraphs 1 through 66 in their entirety, as if fully rewritten herein.

142.    On December 22, 2017, Ohio Governor John Kasich ("Kasich") signed into law Ohio House Bill 199 ("HB 199"), which made significant changes to the former Mortgage Brokers Act, R.C. 1322.01, *et seq.* HB 199 substantially broadened the scope of the statute, now renamed the Residential Mortgage Lending Act, to apply to mortgage lenders.

143.    On December 19, 2018, Kasich signed into law Ohio House Bill 489 ("HB 489"),

to again broaden the scope of the RMLA to apply to mortgage servicers. HB 489 now defines "mortgage servicer" and inserts the term into sections throughout Chapter 1322. HB 489's title specifically "require[s] registration of mortgage loan servicers."

144. Shellpoint is subject to the requirements of the RMLA and does not qualify for the exemptions listed in R.C. 1322.04.

145. "No person ... shall act as a ... mortgage servicer ... without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a ... mortgage servicer ... in this state." R.C. 1322.07(A).

146. Shellpoint is a mortgage servicer under the RMLA as it "holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement." R.C. 1322.01(BB).

147. Shellpoint, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

148. Shellpoint is a registrant under R.C. 1322, as the Ohio Department of Commerce, Division of Financial Institutions has issued it certificates of registration, License No. RM.803970. R.C. 1322.01(HH).

149. Plaintiffs are each a "buyer" as defined by R.C.1322.01(I), as they are individuals whose loan is serviced by a mortgage servicer, Shellpoint.

150. A registrant cannot:

a. Make false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engage in a continued course of misrepresentations. R.C. 1322.40(B); and

b. Engage in conduct that constitutes improper, fraudulent, or dishonest dealings. R.C. 1322.40(C).

151.     Shellpoint violated R.C. 1322.40(B) by:

a.  Failing to send written notices to Plaintiffs at their designated notice address requesting missing, supplemental, or corrective information and/or documents; and

b.  Engaging in a continued course of misrepresentations concerning its loss mitigation review of the Application.

152.     Shellpoint violated R.C. 1322.40(C) by engaging in improper and dishonest dealings by:

a.  Failing to properly request missing, supplemental, or corrective information and/or documents through written notices to Plaintiffs' designated notice address;

b.  Improperly closing out its review of the Application twice;

c.  Allowing the wrongful Foreclosure Action to be filed; and,

d.  Failing to correct its errors after the receipt of the NOEs.

153.     Shellpoint's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 63.

154.     As a result of Shellpoint's wrongful conduct, Shellpoint is liable to Plaintiffs for actual damages, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.52.

155.     A registrant is required to comply with all duties imposed by other statutes or common law and:

(2)  Follow reasonable and lawful instructions from the buyer;

(3)  Act with reasonable skill, care, and diligence; and

(4)  Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan.

R.C. 1322.45(A)(3)-(4).

156.     A registrant cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

157.     Shellpoint violated R.C. 1322.45(A)(2) by failing to follow Plaintiffs' reasonable and lawful instructions to send all communications to their counsel at Plaintiffs' designated notice address.

158.     Shellpoint violated R.C. 1322.45(A)(3) by failing to act with reasonable skill, care and diligence in dealing with Plaintiffs' loss mitigation submissions, the RFI, and the NOEs.

159.     Shellpoint violated R.C. 1322.45(A)(4) by failing to act in good faith and fair dealing when dealing with Plaintiffs' loss mitigation submissions and allowing the Foreclosure Action to be filed.

160.     Shellpoint's actions have caused Plaintiffs to suffer actual damages, as outlined, *supra*, at ¶ 63.

161.     As a result of Shellpoint's conduct, Shellpoint is liable to Plaintiffs for actual damages, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.45(D).

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE** Plaintiffs Anthony and Melissa Cancilliere respectfully request that this Court enter an Order granting judgment against Defendant Shellpoint Mortgage Corporation as follows:

A.     Actual damages in an amount to be determined at trial for the allegations contained in Counts One through Four;

B.     Statutory damages of Two Thousand Dollars ($2,000.00) per borrower per violation of RESPA contained in Counts One through Three;

C.   Punitive damages as to the violations of the RMLA as contained in Count Four;

D.   Costs and reasonable attorneys' fees as to all Counts; and,

E.   Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Anthony and Melissa*
*Cancilliere*

## JURY DEMAND

Plaintiffs Anthony and Melissa Cancilliere hereby respectfully demand a trial by jury on all such claims that may be so tried.

/s/ *Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith, Jr. (0097147)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Anthony and Melissa*
*Cancilliere*